IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:21-cv-192

| | |
|---|---|
| DOUGLAS B. KAPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **COMPLAINT FOR INJUNCTIVE** |
| CARLIE C.`S IGA, INC. & CARLIE C`S ) | **RELIEF, DECLARATORY, AND** |
| IGA II, INC. ) | **OTHER EQUITABLE RELIEF** |
| Defendants. ) | **(JURY TRIAL DEMANDED)** |
| ) | |
| ) | |

COMES NOW Plaintiff Douglas B. Kapp, by and through his undersigned counsel hereby files this Complaint against Defendants Carlie C's IGA, Inc. and Carlie C's IGA II, Inc. ("Carlie C's" or "Defendants") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

**OVERVIEW OF PLAINTIFF'S CLAIMS**

1. As of 2012, 4.2 million Americans aged 40 years and older suffer from uncorrectable vision impairment, out of which 1.02 million who are blind; this number is predicted to more than double by 2050 to 8.96 million due to the increasing epidemics of diabetes and other chronic diseases and our rapidly aging U.S. population.

2. Plaintiff is a blind and visually-impaired person[1] who requires screen-reading software to use and comprehend websites, and he brings this civil rights action against Carlie C's, a grocery store, for its failure to design, construct, maintain, and operate its website, carliecs.com, related pages, and its online shopping feature (the "website") to be accessible to and independently usable by Plaintiff and other blind or visually-impaired people.

3. For several years now, the U.S. Department of Justice, the agency with authority to enforce the ADA and promulgate regulations under Title III, has consistently maintained the position that there is a compelling national interest in ensuring that websites comply with the broad mandate of the ADA in order to ensure that disabled persons are not denied the "opportunity to participate and benefit from the goods, services, privileges or advantages afforded to other individuals." *See* STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA, filed in *Gil v. Winn-Dixie Stores, Inc*. (No. 16-CV-23020-RNS) (S.D. Fla 2016).

4. More recently, on September 25, 2018, in a letter to U.S. House of Representative Ted Budd, U.S. Department of Justice Assistant Attorney General Stephen E. Boyd confirmed that public accommodations must make the websites they own, operate, or control equally accessible to individuals with disabilities. Assistant Attorney General Boyd's letter provides:

> The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago. This interpretation is consistent with the ADA's Title III requirement that the

---

[1] Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.[2]

5. In addition to the DOJ's position identified above, as of the filing of this complaint, several places of public accommodation have been subjected to liability under Title III of the ADA for maintaining a website with webpages and hosted content that is inaccessible to persons with visual disabilities such as Plaintiff. One of these companies includes a grocery store chain named Winn Dixie that operates in the southeastern United States. Defendants have thus received fair notice that its website and related applications must comply with the ADA.[3]

6. Carlie C's is a grocery store that operates several physical locations throughout the Southeastern United States that are places of public accommodation under the ADA. U.S.C. § 12181.

7. Carlie C's operates a website carliecs.com, and is responsible for the policies, practices, and procedures concerning the website's development, its maintenance, and the content which is hosted on it.

8. The claims asserted in this complaint arise out of the inaccessible nature of Defendants' website, which denies Plaintiff the full and equal opportunity to enjoy the services Carlie C's provides to the general public and its sighted customers.

---

[2] *See* Letter from Assistant Attorney General Stephen E. Boyd, U.S. Department of Justice, to Congressman Ted Budd, U.S. House of Representatives (Sept. 25, 2018).
[3] *See Robles v. Dominos Pizza*, LLC 913 F.3d 898 (9th. Cir. 2019) ("As a preliminary matter, we hold that Domino's has received fair notice that its website and app must comply with the ADA.") *cert. denied*, 589 U.S. _ (Oct. 7, 2019)(No. 18-1539); *see also Gil v. Winn-Dixie Stores*, Inc, 257 F.Supp. 3d 1340 (S.D. Fl. 2017) ("The factual findings demonstrate that Winn-Dixie's website is inaccessible to visually impaired individuals who must use screen reader software. Therefore, Winn-Dixie has violated the ADA because the inaccessibility of its website has denied Gil the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations that Winn-Dixie offers to its sighted customers.").

9. Because Defendants' website is not fully and equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiff seeks a permanent injunction to cause a change in Defendants' policies and practices so that its website will become accessible to blind persons like Plaintiff.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, et seq., and 28 U.S.C. § 1332.

9. This Court has personal jurisdiction over Defendants because they are deemed residents of the State of North Carolina and conduct and continue to conduct a substantial and significant amount of business in the State of North Carolina.

10. Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. §1391(b)(1) because Defendants reside in this District and this Court has personal jurisdiction over Defendants.

## PARTIES

11. Plaintiff Douglas B. Kapp is a resident of the state of North Carolina. He is also a blind, visually-impaired, person and a member of a protected class of individuals under the ADA. Specifically, Plaintiff is substantially limited in performing one or more major life activities; including but not limited to visual perception, walking around stores, and choosing items for purchase.

12. Defendants are North Carolina domiciled corporations that own, operate, and/or manage a grocery store business with locations throughout North Carolina.

13. Upon information and belief, one or both Defendants maintain and responsible for a website with a URL of carliecs.com whose inaccessible design is the subject of this suit.

14. Plaintiff has been denied the full use and enjoyment of the services offered and provided on Defendants' website, and the web accessibility barriers on carliecs.com deter and obstruct Plaintiff from independently meeting essential shopping needs through carliecs.com.

## FACTS

15. The Internet has become a significant source of information, and essential tool for completing everyday activities such as shopping, learning, and banking, both for sighted and visually-impaired persons alike.

16. When websites are accessible, the Internet provides individuals with disabilities great independence.

17. Blind persons are able to access and consume the content of websites by using their keyboards in conjunction with screen access software that vocalizes the textual and visual information sighted users see on a computer screen. This technology is known as screen-reading software. Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person may employ to fully and independently access the internet.

18. Blind and visually-impaired users of computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately form their computer or mobile device.

19. An accessible website and any related apps should be designed and coded in such a way that

a screen reader is able to successfully convert content that is displayed visually to sighted users (including the text, images, buttons, and links on a webpage) into understandable synthesized speech.

20. For screen-reading software to function, the information on a website must be capable of being rendered into meaningful text. For this to occur, the website's designer must adhere to widely known and achievable programing and design rules. When these standards are not followed, website content will not be capable of being rendered into meaningful text and the user will encounter barriers to operating and navigating the website. Consequently, the visually impaired user is unable to effectively access the same content available to sighted users and utilize the other functions offered by the website.

21. Screen-reading software is currently the primary method a blind person uses to independently access the internet, websites and other content hosted online.

**Defendants are subject to Title III of the ADA because they operate a place of public accommodation and carliecs.com is essential to the range of goods and services Defendants offer to the general public.**

21. The ADA specifically provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. §12182(a); 28 C.F.R. §36.201(a). The ADA further requires that a public accommodation provide accessible electronic and information technology as auxiliary aids and services. See 28 C.F.R. §36.303(a), (b) and (c)(ii).

22. Commercial websites that are not accessible for blind individuals using screen-readers and

6

Case 5:21-cv-00192-BO   Document 1   Filed 04/26/21   Page 6 of 14

keyboard navigation violate this basic mandate.[4]

23. Defendants are subject to the requirements of Title III of the ADA and its regulations because Carlie C's is a "place of public accommodation" under 42 U.S.C. § 12181. Specifically, Defendants own and operate grocery stores that affect "commerce" and they fall within the scope of 42 U.S.C. § 12181(E) ("a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment").

24. Defendants' website is instrumental in facilitating customer access to the goods, services, and benefits offered at the physical locations owned, operated, and/or managed by Defendants. Key features of the carliecs.com website allow customers to view pricing information, clip "digital coupons" and add them to a digital account, shop for groceries online by setting up a drive-thru or pick up order and placing a delivery order.

25. Online grocery shopping applications have become a common and critical means for the general public to get pricing information and purchase essential goods and services typically only found at grocery stores.

26. With the movement toward online shopping, there are now two ways that the public shops for groceries: (1) in-person or (2) online.

27. The advent of online grocery shopping has already made the day-to-day lives of many members of the general public more convenient.

---

[4] *See National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006). The Department of Justice (the "DOJ") has consistently stated its view that the ADA's accessibility requirements apply to websites belonging to private companies. *See, e.g.*, Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary, 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 6, 2010) ("The Department believes that Title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations."). Thus, Defendants are on notice that the ADA's general mandate applies to website design and accessibility.

28. The public health benefits achieved by the nationwide "stay-at-home" orders put in place by state and local governments in the early spring of 2020 only further show the need for a system that meets consumer demand through a combination of in-person and online grocery shopping.

29. Carlie C's website specifically encourages customers to shop online and to get savings by collecting and "clipping" digital coupons.

30. Online grocery shopping has the potential to make the day-to-day lives of persons with visual impairments more convenient as well.

31. In light of the foregoing, Defendants' website operates as an essential gateway and an extension of the Carlie C's physical locations, and there is a direct nexus between the website carliecs.com and the operation of Defendants' brick-and-mortar grocery stores.

32. The Defendants' website is thus subject to regulation under Title III of the ADA because the statute applies to the services of a place of public accommodation, and the implementing DOJ regulations require that a public accommodation "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1) (emphasis added).

**There are inaccessible features and content on Defendants' website that impede access to the goods and services offered by Carlie C's for blind and low vision customers, including Plaintiff.**

33. Carlie C's is a grocery store business with 25 locations in North Carolina.

34. Plaintiff would like the option to shop online for items and deals that are only available at Carlie C's.

35. Carlie C's offers certain high-quality lower-cost products, including the IGA brand, that are not available at other grocery retailers.

36. Carlie C's often has prices for certain items that are below the prices offered by their competitors.

37. However, among other issues, the details of the deals, savings, and other offerings that Defendants offer to their customers via carliecs.com are not fully accessible to persons with visual impairments such as Plaintiff who rely on assistive technology to navigate the web.

38. Specifically, to comprehend the information that is visually displayed on websites, Plaintiff uses "screen reader" software which translates the raw information of a webpage into synthesized speech.

39. Plaintiff has attempted to utilize carliecs.com with a screen reader software program (which translates the raw information of a webpage into synthesized speech).

40. Plaintiff continues to desire to utilize carliecs.com for informing his purchasing decisions and meeting grocery needs, but he is unable to independently do so since some features of the inadequately designed website are effectively unnavigable to him due to his disability.

41. On information and belief, Defendants or their agents charged with designing and managing carliecs.com did not adequately test the features of the website with screen reader software before launching it to the general public.

42. On information and belief, Defendants have not adopted and/or has neglected to follow an appropriate Web Accessibility Policy to help ensure that individuals with disabilities enjoy full and equal access to the goods and services provided by the website.

43. On information and belief, Defendants have not designated an employee or third-party consultant to help ensure that individuals with disabilities have full and equal use of its website.

44. On information and belief, Defendants have not instituted any kind of web accessibility user

accessibility testing group to ensure full and equal use of its website by individuals with disabilities.

45. The Carlie C's website does not fully meet the Web Content Accessibility Guidelines ("WCAG") basic level of web accessibility.

46. Thus, Plaintiff will continue to suffer irreparable injury from the Defendants' acts, policies, and practices set forth herein unless enjoined by this Court.

**COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

47. The foregoing paragraphs are realleged and incorporated by reference.

48. As a result of the barriers to access the carliecs.com website imposes upon Plaintiff and others similarly situated (when the removal of those barriers is readily achievable), the Defendants have denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that are made available to the general public on the website at carliecs.com. This is a violation of Title III of the ADA (42 U.S.C. §12101 et. seq., 42 U.S.C. §12182 et. seq.).

49. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. (42 U.S.C. § 12182(b)(1)(A)(i)).

50. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

    a. "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that

no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." (42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

51. The Carlie C's website is subject to regulation under Title III of the ADA because it has a "nexus" with Defendants' physical locations, which are places of public accommodation under 42 U.S.C. §12181.

52. Alternatively, pursuant to 42 U.S.C. §12181(7)(E), carliecs.com is itself a place of public accommodation under the ADA because it permits, facilitates, and improves access for members of general public to the goods and services Defendants provide. As such, like Defendants' physical stores/locations, the design and functionality of the carliecs.com website must also comply with the broad accessibility mandate of the ADA.

53. However, the Carlie C's website is not in compliance with the ADA.

54. Specifically, the Defendants' website contains several accessibility barriers and failures recognized by the WCAG, including, but not limited to, the following.

    a. The website uses images to convey pricing-related information to sighted users and the image content does not have sufficient text alternatives that would allow Plaintiff to identify and understand the purpose of the image content.

    b. The website does not give Plaintiff and other users who depend on screen-readers to navigate websites a means to bypass content that is repeated on the webpages of the carliecs.com website, making it unnecessarily difficult to reach the main content of the webpage.

    c. Important messages displayed to sighted users are not read by a screen reader.

    d. Instructions which fully convey the required information to be input into a form field

11
Case 5:21-cv-00192-BO   Document 1   Filed 04/26/21   Page 11 of 14

are not present and are not read aloud via the blind-person's screen reader.

   e. Instructions which convey the purpose of a button on a page are not included.

   f. Certain information, when read by a screen reader, is confusing and not understandable.

55. Due to, but not limited to, the above, initiating and successfully using major parts of the carliecs.com website can be virtually impossible for a blind person.

56. Additionally, in some instances, frustrating accessibility issues would prevent blind users from being able to access the benefits and information that Carlie C's offers to the general sighted public on its website.

57. The law requires that Defendants reasonably accommodate Plaintiff's disabilities by removing these and other access barriers. Removal of the barriers is readily achievable, may be carried out without much difficulty or expense, and would not fundamentally alter the nature of Carlie C's offerings.

58. The Defendants have therefore violated Title III of the ADA (and continues to do so) by leaving in place an inadequate website design which burdens and impedes Plaintiff and other blind individuals who rely upon screen reader software from accessing the goods, services, and other privileges offered to the general public at carliecs.com

59. Plaintiff is a member of a protected class of persons under the ADA because he is blind, and he has been, and will be in the absence of an injunction, injured by Defendants' failure to provide its online content and services in a manner accessible with prevailing screen reader programs.

60. Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 as a remedy to Defendants' conduct, including an order that:

a. requires Defendants to adopt and implement a web accessibility policy to help ensure that persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations made available through its website; and

   b. requires Defendants to adopt internal policies and actually implement web design and programming modifications that are targeted at making its website equally accessible to persons with disabilities, including persons with visual impairments.

61. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and he is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendants.

62. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

WHEREFORE, Plaintiff hereby requests the following relief:

a. A jury trial;

b. A Declaratory Judgment that, at the commencement of this action, Defendants' website was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 et seq., and the relevant implementing regulations of the ADA, for Defendants' failure to take action that was reasonably calculated to ensure that its website is fully and equally accessible to, and independently usable by, blind and visually-impaired individuals;

c. A preliminary and permanent injunction enjoining Defendants from further violations of the ADA, 42 U.S.C. § 12181 et seq., with respect to its website, carliecs.com;

d. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

e. For costs of suit; and

f. For such other and further relief as this Court deems just and proper.

This the 26th day of April 2021.

**MAGINNIS HOWARD**
*Counsel for Plaintiff*

BY: /s/ *Garrett L. Davis*
GARRETT L. DAVIS
N.C. State Bar No. 52605
EDWARD H. MAGINNIS
N.C. State Bar No. 39317
7706 Six Forks Rd. Ste 101
Raleigh, North Carolina 27615
Telephone: 919.526.0450
Fax: 919.882.8763
gdavis@maginnishoward.com
emaginnis@maginnishoward.com